IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**ALFRED OMEGAE WILSON**                                              **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO.  3:10CV221 CWR-LRA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Alfred Wilson appeals the Administrative Law Judge's decision denying his application for Disability Insurance Benefits ("DIB"), and requests remand pursuant to sentence six of 42 U.S.C. § 405(g).  The Commissioner opposes the motion and requests an order affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the Commissioner's motion to affirm be granted and Plaintiff's motion to remand be denied.

**Procedural Background**

On May 29, 2007, Plaintiff filed an application for DIB alleging a disability date of July 22, 2005.  The application was denied initially and on reconsideration.  He appealed the denial and on September 23, 2009, Administrative Law Judge Ann Farris ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's

request for review on March 6, 2010. He now appeals that decision and requests remand pursuant to sentence six of 42 U.S.C. § 405(g).

## Facts and Medical Evidence

Plaintiff has not worked since injuring his back at work on July 22, 2005. He was 43 years old. Since that time, he alleges he has been disabled because of "lower back and neck problems, diabetes, [hypertension], and left arm problems."[1] He has a high-school education and has past work experience as a truck driver, hospital maintenance worker, and warehouse worker. The relevant evidence includes Plaintiff's medical records from the emergency room at Southwest Mississippi Regional Medical Center, St. Dominic Jackson Memorial Hospital, Department of Veterans Affairs Medical Center (VAMC), Jackson Neurosurgery Clinic, and Mississippi Sports Medicine.

After injuring his back in July 2005, Plaintiff went to the emergency room at Southwest Mississippi Regional Medical Center with complaints of chest pain, left-sided neck pain radiating to his left arm, numbness and tingling in his left arm, vague shortness of breath, and a knot in his lower back. His blood pressure was mildly elevated and he was tender in his anterior chest and "along the left lateral neck going through the thoracic outlet." His chest x-rays were normal and he was in "no major distress."[2]

---

[1] ECF No. 14-6, p. 3.

[2] ECF No. 14-7, pp. 24-54.

In December 2005, Plaintiff returned to the emergency room after injuring his back while "doing some pulling." His chief complaint was back pain. X-rays taken of his lumbar spine revealed minimal degenerative changes. His neurological exam was normal, and there was no localized back tenderness. In March 2006, he went to the emergency room again because he was experiencing pain in his back and on the left-side of his chest. A cervical CT scan indicated minimal spondylosis at C3-4, bilateral spondylosis at C5-6, and an amputation of nerve root sheath at C6-7, "which was suggestive of a disc fragment in the left neural foramen."[3]

After conservative measures failed, Dr. Orhan Ilercil performed a cervical fusion at C5-6 and C6-7 at St. Dominic Hospital on April 7, 2006. Subsequent x-rays and treatment records from May and July 2006 indicated a fusion of C5 through C7 and a stable cervical spine. Despite some numbness and interscapular pain, Plaintiff reported that he was doing well with the resolution of his arm pain. His cervical range of motion was essentially normal and his gait was regular.[4]

By July 2006, Wilson reported that his arm and numbness had "improved to a certain degree," but he still felt numbness, weakness and paresthesia in his left hand. He had been wearing a splint but it offered no relief. He had no problems with his right arm, but had neck and interscapular pain. Dr. Ilercil recommended carpal tunnel release

---

[3]*Id*.

[4]ECF No. 14-8, pp. 3, 10, 41.

3

surgery on the left side, which Plaintiff underwent in December 2006.  A month later, Dr. Ilercil noted that Plaintiff was doing well and that his numbness and paresthesia in his left hand had improved, though he was feeling some local pain and tenderness from his incision.  His main complaint was that he had "right shoulder, neck and interscapular pain and severe low back pain which he has had since the accident.  This [had] gotten to the point where it [was] debilitating to him.  He [could] barely do any activities because of his low back pain and [had] not done any physical therapy recently."  Dr. Ilercil recommended an MRI for Plaintiff's right shoulder and x-rays of his cervical and lumbar spines, and a consultation with another physician to determine whether his low back pain could be managed non-surgically.  MRI results showed degenerative changes with potential for rotator cuff impingement on the right, and lumbar spine x-rays did not reveal any "overt evidence of instability."[5]

Treatment notes from May 2007, indicated Plaintiff's neck pain had "improved dramatically," but treatment injections for his shoulder were not helping.  In August 2007, he had rotator cuff surgery, and within three months, Dr. Larry Field noted that Plaintiff was doing well and was confident that Plaintiff could return to work.[6]  Over the next several months, Plaintiff continued to have full range of motion in all his extremities with good muscle strength throughout, but continued complaints of back pain.  In June 2008,

---

[5] ECF No. 14-8, pp. 7, 35-37.

[6] ECF No. 14-8, p. 156.

MRI results showed a "disc bulge at L2-3 and mild-moderate bilateral neural foramina narrowing and degenerative disc disease at L3-4 with spinal stenosis and spondylitic changes."[7] In April 2009, Plaintiff felt that overall, his condition had improved following his neck and carpal tunnel surgeries. His back had improved 30% following surgery, but he still had "pain and significant tenderness over the sacroiliac region on his left side." As for his lower back problems, his leg pain was only a problem when he did a "considerable amount of lifting, bending, twisting, or [was] on his feet for an extended period of time."[8] A month later, in May 2009, doctors recommended a left SI joint injection for his sacroiliitis symptoms and chiropractic care. He was still experiencing muscle strength and a full range of motion in his upper and lower extremities.[9]

Records from July 2005 though July 2009, reflect Plaintiff was treated for high blood pressure, gastroesophageal reflux, diabetes mellitus, and overall pain management at the VAMC. On July 8, 2009, the day after Plaintiff's administrative hearing, VAMC physicians, Dr. Harrington and Dr. May, observed that he was he was only mildly tender to palpation in his posterior neck and had no neurological deficits.[10]

---

[7] ECF No. 14-2, p.12.

[8] ECF No. 14-8, pp. 95-97.

[9] *Id*.

[10] ECF No. 14-7, pp. 55-98; ECF No. 14-8, pp. 49-63; ECF No. 14-9, pp. 1-57.

**Administrative Hearing Testimony**

Plaintiff testified that he has had few pain-free days since his injury. He sits in his recliner with his head propped up because of constant pain. He uses a TENS unit for the pain, and takes three different pain medications which make him drowsy. If he stands or walks for a long period of time, the pain increases. Although he is able to turn his head, he has a plate in his neck and cannot hold the position for long periods of time. He drives occasionally and when he goes grocery shopping with his wife, he has to lean on the grocery cart or use an electric cart. He goes to church every Sunday, and is able to sit through the service without a problem if his chair has an arm rest. If he uses a broom or mop, he feels pain in the center of his back, but he is able to vacuum without a problem. Plaintiff loves to go downtown and sit on a bench and talk to his friends; sometimes they go to McDonald's.[11]

Plaintiff's wife testified that he primarily suffers from lower back pain, which prevents him from mowing the yard and picking up anything weighing more than 10-15 pounds. She also testified that doctors had recommended "infusion shots" for his back, but they had not been done yet.[12]

**Findings of the Administrative Law Judge**

After reviewing all the evidence, the ALJ concluded that Plaintiff was not disabled

---

[11]ECF No. 14-2, pp. 17-49.

[12]ECF No. 14-2, pp. 39-40.

under the Social Security Act. At step one of the five step sequential evaluation,[13] the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that while Plaintiff had severe impairments (status post fusion at C5-7, status post rotator cuff repair, and degenerative disc disease of the lumbar spine), none of these impairments, either alone or in combination, met or medically equaled any listing. At steps four and five, the ALJ found that although Plaintiff could not return to his past relevant work, he has the residual functional capacity to perform light work, "except [he] needs to alternate sitting and standing every hour and he should avoid jobs that require twisting." Relying on vocational expert testimony, the ALJ found that Plaintiff could perform work at jobs existing in the national economy, such as ticket taker, gate tender, and marker. Plaintiff's testimony concerning his limitations appeared to be "self-imposed, given the fact he has not documented that any doctor has requested he restrict his activities." Overall, the ALJ found no objective or other credible evidence that Plaintiff's functional limitations made him "incapable of a restricted range of light work."[14]

---

[13]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[14]ECF No. 14-2, pp. 9-16.

**New Medical Evidence**

Following the ALJ's decision, Plaintiff submitted new evidence to the Appeals Council from VAMC physician, Dr. Katherine May-- two forms entitled: *Residual Functional Capacity Assessment* and *Medical Opinion Re: Ability to Do Work-Related Activities (Physical)*. Both forms are dated January 13, 2010. On the latter, Dr. May indicates that Plaintiff has the maximum ability to: occasionally lift and carry 20 lbs; frequently carry 10 lbs; stand and walk less than 2 hours; and, sit for less than 2 hours. She indicates that Plaintiff needs the option to alternate sitting, standing, and walking at will; and can sit no longer than 90 minutes, stand no longer than 20 minutes, and must walk around for at least 30, but no longer than 60 minutes, before needing to change positions. She observes that Plaintiff walks with a cane and opines that he will need to lie down three times a day during an eight-hour workday. Plaintiff also has postural limitations that allow him to occasionally stoop, but he cannot twist, crouch, climb stairs or ladders, and has limitations in reaching, pushing/pulling, and handling, all of which are affected by "numbness in (L) hand/fingers." She bases these opinions on Plaintiff's "L2-L3 disc with impingement on nerve" and "s/p cervical fusion."[15]

Though many of the same findings are indicated on the *Residual Functional Capacity Assessment* form, there are inconsistencies. Dr. May indicates, for example, that Plaintiff has the residual functional capacity to lift and carry 10 lbs both occasionally

---

[15]ECF No. 16-1.

and frequently and finds no postural limitations in Plaintiff's ability to climb, stoop, kneel, crouch, or crawl.[16]

### Discussion

**1.    Plaintiff is not entitled to a sentence-six remand.**

Plaintiff's sole argument on appeal is that the Court should remand this matter pursuant to sentence six of 42 U.S.C. § 405(g), to allow the Commissioner to consider the new evidence submitted by Dr. May. Wilson advises that there is good cause for the evidence not previously being considered. He states that Dr. May's opinions were submitted to the Appeals Council in a timely manner, but for "whatever reason" were not included in the administrative record — a fact he did not become aware of until the record was filed in this case. In support, Plaintiff's counsel submits an affidavit from his paralegal averring that she mailed the documents to the Office of Disability, Adjudication and Review.[17] Focusing exclusively on Dr. May's opinion that Plaintiff would be required to lie down 3 times during an 8-hour workday, Wilson argues that "no employer could be expected to accommodate an employee who is required to lie down several times during an 8 hour work shift at unscheduled times." Had the Appeals Council considered Dr. May's opinions, Plaintiff submits "the rationale behind the ALJ's decision fails."

---

[16]ECF No. 16-2. Environmental limitations are also indicated on the *Medical Opinion Re: Ability to Do Work-Related Activities (Physical)* form, but not on the *Residual Functional Capacity Assessment form.*

[17]ECF No. 16-3.

To justify a sentence-six remand, "the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding."[18] *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995) (quoting *Bradley v. Bowen,* 809 F.2d 1054, 1058 (5th Cir. 1987)). "Evidence that was 'not in existence at the time of the administrative . . . proceedings meets the 'new' requirement for remand to the Secretary.'" *Hunter v. Astrue*, 283 Fed.Appx. 261, 262 (5th Cir. 2008). To be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989) (quoting *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985)). There must also be a reasonable possibility that the evidence would have

---

[18] The sixth sentence of 42 U.S.C.A. § 405(g) provides in relevant part that:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

The Commissioner does not dispute that the additional evidence submitted by Plaintiff is new, but argues that a sentence-six remand is unwarranted because the evidence is not material and Plaintiff has not shown good cause. The Commissioner cites Wilson's failure to produce a certified mail receipt or other documents to substantiate his claim that the evidence was mailed to the Appeals Council. Though Plaintiff has produced no evidence to rebut this assertion, the Court, in the interest of justice, will accept that Plaintiff mailed the evidence to the Appeals Council in a timely manner. To demonstrate good cause, the claimant must still provide an excusable explanation for failing to present the evidence earlier in the proceeding. *Skalij v. Chater*, 103 F.3d 126 (5th Cir. 1996) (citing *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)). Plaintiff has offered no such explanation. That Dr. May's assessment occurred after the ALJ's decision is insufficient. "The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803.

Even if the Court were to find good cause, the evidence is immaterial. The relevant time period to establish disability in this case was from the claimant's alleged disability onset date of July 22, 2005, through the date of the ALJ's decision, September 23, 2009. Dr. May's residual functional capacity assessment is dated January 13, 2010, nearly four months after the ALJ issued her decision denying Plaintiff's disability. Dr.

May also indicates that her opinions are based on a "current evaluation" of Plaintiff.[19]  A medical assessment is not material if it reports only on the claimant's recent health and current functional status.  *Haywood*, 888 F.2d at 1472.  At best, Dr. May's assessment is evidence of the deterioration of Plaintiff's previous condition.  As such, it may provide a basis for a new application for disability benefits, but not justification for remand.  *See, e.g.*, *Leggett*, 67 F.3d at 567.

Plaintiff also fails to show that this evidence would change the outcome of his disability determination.  Although he relies heavily on Dr. May's opinion that Plaintiff needs to lie down three times daily during an eight-hour workday, this assessment was based on her evaluation of the alleged deterioration of Plaintiff's physical impairments.  Moreover, based on the record at the time, the ALJ concluded that Wilson retained the residual functional capacity to perform light work that allows for alternate sitting and standing every hour and no twisting.  In making this finding, the ALJ considered all of the medical evidence, including a physical residual functional capacity assessment completed by Dr. William Hand.  That assessment pre-dates the ALJ's decision and addresses Plaintiff's condition at that time.  In Dr. Hand's opinion, Plaintiff had no postural limitations, and could stand and/or walk, or sit for six hours in an eight-hour workday.[20]

---

[19]"This seems reasonable, given that one would expect, absent indications to the contrary, a physician to rely on the present condition of the patient in rendering a medical opinion." *Fields v. Sullivan*, 985 F.2d 557 (5th Cir. 1993).

[20]ECF No. 14-8, pp. 80-87.

Several months after the administrative hearing, Dr. May opined that Plaintiff's maximum ability to sit, stand, and walk, was less than two hours. Plaintiff also testified that he could not "sit down in one place for more than two and half hours at the most."[21] The ALJ's residual functional assessment, which restricts Plaintiff to alternate sitting and standing every hour, is more conservative than that of Dr. Hand, Dr. May, and Plaintiff himself. No reasonable probability exists that Dr. May's other assessments would change the outcome on remand either. Her opinions are at odds with VAMC records that show Plaintiff had no neurological deficits, walked every day, frequently rated his pain score as low, and had a full range of motion and muscle strength in his upper and lower extremities.[22]

     Lastly, the Court notes that at the administrative hearing, Plaintiff's primary reason for being concerned about his ability to complete an eight-hour work day was due to the drowsy side-effect caused by his medications, not the physical limitations that Dr. May suggests. He testified that he would be willing to apply for work but did not believe that he could keep a job because his medications caused him to be drowsy. Notwithstanding this testimony, the ALJ observed that the "medical evidence does not document that he has complained of [drowsiness] to his physicians." No complaints are documented by Dr. May either.

---

[21]ECF No. 14-2, pp. 46-47.

[22]ECF No. 14-9, pp. 2-39.

In sum, Plaintiff has not demonstrated that remand pursuant to 42 U.S.C. § 405(g) is warranted, and his request to remand should be denied. The court will consider the Commissioner's motion to affirm based on the administrative record presented to the ALJ.

### 2.     The ALJ's decision is supported by substantial evidence.

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564 (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). The ALJ's findings in this case are supported by substantial evidence at every step of the sequential evaluation.

Applying the severity standard set forth in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985), the ALJ found that Plaintiff's status post fusion at C5-7, status post rotator cuff repair, and degenerative disease of the lumbar spine were medically severe, but did not meet or medically equal any listing. All of Plaintiff's medically determinable impairments, including those non-severe, were considered in the remaining steps of the

sequential analysis.[23] The objective medical evidence did not establish that Plaintiff's gastroesophageal reflux disease and diabetes mellitus were medically severe impairments. Though he was diagnosed with both, the diagnosis of an impairment alone is insufficient to establish a severe impairment or disability. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.").[24] Neither condition produced any work-related limitations, and his diabetes was controlled by medication. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (internal citations omitted).

     Also, despite Plaintiff's testimony of debilitating pain, objective medical evidence indicated that after surgery, Plaintiff's neck, hand and arm pain improved.[25] Though he still experienced numbness and interscapular pain after the cervical fusion in April 2006, his arm pain resolved and his cervical range of motion was essentially normal. The numbness and parethesia in his left hand also resolved after his carpal tunnel release in December 2006. Within three months of his rotator cuff surgery in August 2007, Plaintiff was "doing well" and had full range of motion and good muscle strength in all of his extremities. Follow-up examinations from December 2007 though May 2009

---

[23]ECF No. 14-2, p. 13.

[24]Though Plaintiff indicated on his application that his hypertension caused him to be disabled, he does not produce any evidence to substantiate this claim.

[25]ECF No. 14-2, p. 14.

continued to reflect normal motor and muscle strength, and a full range of motion in both his upper and lower extremities. Thus, the ALJ found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms and their associated functional limitations were not fully credible. No medical source had indicated that Plaintiff's impairments met or medically equaled any listing. Rather, Plaintiff's limitations appeared to be "self-imposed." Whenever statements about the intensity, persistence or limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements and the determination is entitled to considerable deference. *Foster v. Astrue*, 277 Fed. Appx. 462 (5th Cir. 2008). The ALJ's findings will not be disturbed here.

Finally, the sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c) (2009). Based on the administrative record before her, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work that allows for alternative sitting and standing every hour and no twisting. In making this finding, the ALJ "considered all symptoms and the extent to which these can reasonably be accepted as consistent with the objective medical evidence and other evidence."[26] No medical provider nor consultative examiner opined that Plaintiff's functional limitations were inconsistent with work at a light exertional level. Absent any objective credible evidence that Plaintiff was "incapable of a

---

[26]ECF No. 14-2, p. 13.

16

restricted range of light work," the ALJ determined that Plaintiff was capable of performing work as a ticket taker, gate tender, and marker. Though Plaintiff complained of lower back pain, he failed to show that he was so functionally impaired that he could not engage in any substantial gainful activity. The mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that the applicant can work despite being in pain or discomfort, as it does here. *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). The ALJ's discretion to determine whether pain is disabling is entitled to considerable deference and will not be disturbed by the Court.

## Conclusion

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's Motion to Remand should be denied; that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009).

      This the 15th day of August 2011.

                                          /s/ Linda R. Anderson
                            UNITED STATES MAGISTRATE JUDGE